UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PARTH ATUL CHATWANI, ) | |
| ) | |
| Plaintiff, ) | Case No. 25-cv-04024 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| KRISTI NOEM, Secretary, U.S. ) | |
| Department of Homeland Security & ) | |
| TODD LYONS, Acting Director, U.S. ) | |
| Immigration and Customs Enforcement, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Parth Atul Chatwani brought this action against Kristi Noem, Secretary of the Department of Homeland Security and Todd Lyons, Acting Director of the Immigration and Customs Enforcement ("ICE") for habeas, declaratory, and injunctive relief related to the termination of Chatwani's records in the Student and Exchange Visitor Information Systems ("SEVIS"). Now before the Court is the government's motion to dismiss Chatwani's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the government's motion is granted in part and denied in part, Chatwani's petition for a writ of habeas corpus is dismissed without prejudice, and Chatwani's motion for a preliminary injunction is granted.[1]

---

[1] Chatwani previously filed a motion for a temporary restraining order ("TRO"). *See* (Dkt. 8). He subsequently requested that motion be converted to a motion for a preliminary injunction, and thereafter filed the instant amended motion for preliminary injunction. (Dkt. 15, 27). The Court therefore strikes Chatwani's TRO motion as moot, and considers only his motion for a preliminary injunction and the government's motion to dismiss in this opinion.

1

**BACKGROUND**

    **I.**    **F-1 Program & SEVIS**

International students can enroll in government-approved academic institutions and enter the United States on an F-1 visa issued by the U.S. Department of State. *See* 8 U.S.C. § 1101(a)(15)(F). Once students are granted F-1 student status, they are permitted to remain in the United States for the duration of that status as long as they maintain requirements of their visa classification—most importantly, maintaining a full course of study or approved practical training. *See* 8 C.F.R. § 214.2(f); under 8 C.F.R. § 213.2(f).

U.S. Immigration and Customs Enforcement ("ICE") oversees the Student and Exchange Visitor Program ("SEVP"). (Dkt. 29) ¶ 2. SEVP and universities use SEVIS as a database to report and monitor international students' compliance with their F-1 status, taking certain actions based on the universities' updates. *Id.* Designated School Officials ("DSOs") working at approved schools must report through SEVIS to SEVP when a student fails to maintain status. *Id.* ¶ 15.

An F-1 student may fall out of status if (1) the student "fails to maintain status," or (2) DHS initiates "termination of status." First, to maintain lawful status, an F-1 student may not engage in certain specified activities, including engaging in unauthorized employment, providing false information to DHS, or engaging in "criminal activity." 8 C.F.R. § 214.2(e)–(g). "Criminal activity" is narrowly defined to mean a "conviction … for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g). Second, DHS can terminate F-1 student status through the SEVIS system only when (1) a previously granted waiver under the Immigration and Nationality Act is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3)

DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d).

Outside of those two scenarios, DHS cannot terminate nonimmigrant status. *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019). The revocation of a visa by the State Department also does not constitute a failure to maintain status, and visa revocation is not by itself cause for terminating a student's SEVIS record.[2]

## II. Factual Background

Chatwani is a citizen and national of India. He first arrived in the United States on September 6, 2022 with an F-1 visa to attend Northeastern University. (Dkt. 29) ¶ 25. Upon entry in Boston, Chatwani was questioned by CBP about his finances and tuition payments. *Id.* CBP then canceled his F-1 visa and allowed him to withdraw his application for admission to the U.S. *Id.* After Chatwani informed Northeastern University, the university contacted CBP, which admitted that Chatwani's refused entry and visa cancellation were in error. *Id.* ¶ 26. Chatwani then applied for and successfully obtained a new F-1 visa, but decided this time to apply for admission to Northwestern University in Evanston, Illinois. *Id.* Chatwani disclosed his prior CBP encounter to Northwestern. *Id.* ¶ 27. Northwestern officials understood Chatwani to be eligible to enroll and return to the U.S. as a graduate student, and gave him the necessary documentation to apply for an F-1 visa. *Id.*

On July 20, 2023, the U.S. Consulate in Mumbai issued Chatwani a new F-1 visa for him to travel to the U.S.. *Id.* He arrived in Chicago on September 4, 2023. *Id.* Since then, he has been studying and receiving academic-related training with authorization from the U.S. Citizenship and Immigration Services ("USCIS"). *Id.* After graduating in December 2024, Chatwani sought post-

---

[2] *See*, Immigration Custom Enforcement ("ICE") Policy Guidance 1004-04–Visa Revocations (June 7, 2010); See Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).

completion Optional Practical Training ("OPT") to work as a Graduate Assistant at Northwestern's Kellogg School of Management. *Id.* ¶ 28. USCIS granted his request and Chatwani received 12 months of employment authorization, valid from February 2025 to February 2026. *Id.*

On April 5, 2025, Chatwani was informed by Northwestern that his SEVIS record had been terminated for the stated reason of "Otherwise Failing to Maintain Status-Individual identified in criminal records check and/or has had their VISA revoked." *Id.* ¶ 29. A few days later, the termination reason was changed to "Other – Individual identified in criminal records check and/or has had their VISA revoked." Chatwani does not have any criminal record and is unaware of any reason why either of these conditions apply to him. *Id.* ¶ 29, 30. He received no advanced notice that ICE planned to terminate his SEVIS record. *Id.* ¶ 42.

Around the same time, Defendants notified Chatwani that his OPT period had "ended." *Id.* ¶ 31. Because his SEVIS record was terminated, Northwestern was no longer able to employ Chatwani. *Id.* ¶ 34. Chatwani filed this suit on April 14, 2025, challenging the government's termination of his SEVIS record and their decision to end his OPT authorization. *Id.* ¶ 35. However, on April 27, 2025, Chatwani found that the Student and Exchange Visitor Program ("SEVP") had reactivated his SEVIS record. *Id.* ¶ 37. Chatwani's SEVIS record shows that it was terminated from April 4, 2025 to April 26, 2025 and reactivated as of April 26, 2025. *Id.* ¶ 38. The next day, Chatwani resumed work with Northwestern. *Id.* ¶ 39.

**LEGAL STANDARD**

The government moves to dismiss Chatwani's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss under 12(b)(1) challenges a court's subject-matter jurisdiction. The plaintiff bears the burden of establishing the elements necessary for subject matter jurisdiction, including standing to seek relief. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021); *International Union of Operating Eng'rs v. Daley*, 983 F.3d 287, 294 (7th Cir. 2020).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In resolving motions under Rules 12(b)(1) and 12(b)(6), the Court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019).

**DISCUSSION**

**I.   Motion to Dismiss**

  *a.  Mootness*

First, the government argues that Chatwani's case is moot because the primary relief sought—the "reactivation" of Chatwani's SEVIS record—has been accomplished. (Dkt. 41) at *7. The government claims that because the "reactivation" of Chatwani's SEVIS record was retroactive such that there was no gap in his SEVIS status, and because there are no plans to "re-terminate" those records in the foreseeable future, his case should be dismissed.

A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Chatwani argues that his case "falls squarely into the exception for mootness when a defendant voluntarily ceases its unlawful conduct in response to litigation." (Dkt. 48) at *4. Under the voluntary cessation doctrine, "a defendant's

5

voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't* Servs. *(TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, (1982)).

Courts are skeptical when a defendant seeks dismissal of a claim as moot on the grounds that it has changed its practice while reserving the right to go back to its old ways after the lawsuit is dismissed. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [they] left off, repeating this cycle until [they] achieve all their unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Accordingly, voluntary cessation does not moot a conflict unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth,* 528 U.S. at 189 (internal citations omitted). The burden of proving that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness. *Id.* at 170.

The government argues that the same conduct is not likely to recur because "ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial termination." (Dkt. 30-3) ¶ 6. This statement is generic and vague, and does not ensure that the government will not return to its prior policy of unlawfully terminating students' F-1 statuses. Perhaps Chatwani's SEVIS records will not be terminated on the same record as in the instant case, but ICE's new policy leaves open the possibility that it may invoke a different, but nevertheless unlawful, justification to terminate his SEVIS records again. The government's bare assurances that it is unlikely to do so are insufficient. *See Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 235 (2024) (determining defendant did not meet its "formidable burden" of establishing it could not reasonably be expected to resume its challenged conduct in the future). Because the government has not borne its burden of demonstrating that the challenged conduct

6

could not reasonably be expected to recur, Chatwani's case falls within the voluntary cessation exception. The Court therefore will not dismiss Chatwani's claims based on mootness.

### b. *Counts I, III: Due Process*

#### i. Unlawful F-1 Status Termination

The government argues that Chatwani's due process claim challenging the termination of his F-1 status is meritless because Chatwani does not have liberty or property interests in his SEVIS records. (Dkt. 41 at *11.) According to the government, the SEVIS database is only an administrative tool that does not affect the lawfulness of someone's nonimmigrant status. *Id.* at *12. Moreover, even if Chatwani does have a property interest in his SEVIS records, the government asserts that the administrative processes USCIS affords complainants if they lose their F-1 statuses would satisfy the Fifth Amendment. *Id.* In response, Chatwani argues that his property and liberty interests are not in the SEVIS records themselves, but in his "ability to maintain his F-1 status and thereby his employment authorization." (Dkt. 48) at *8.

To make out a claim for a violation of due process, a claimant must have "a liberty or property interest in the outcome of the proceedings." *Dave v. Ashcroft*, 363 F.3d 649, 652–53 (7th Cir. 2004). Even accepting Chatwani's assertion that the property interest at issue is his lawful visa status, a petitioner has no liberty or property interest in obtaining purely discretionary relief in immigration proceedings. *See Achacoso–Sanchez v. INS,* 779 F.2d 1260, 1264 (7th Cir.1985). The denial of such relief therefore cannot implicate due process. *Ashcroft*, 363 F.3d at 653. Several courts in the Seventh Circuit have found that there is no constitutionally protected interest in either obtaining or continuing to possess a visa. *See*, e.g., *Musunuru v. Lynch*, 831 F.3d 880, 891 (7th Cir. 2016) (holding plaintiff did not have a constitutionally-protected property interest in the continued validity of his visa); *Nasir v. U.S. Dep't of State*, 749 F. Supp. 3d 938, 944 (N.D. Ill. 2024) (Valdez, J.)

(finding no due process interest in visa application dependent on USCIS's discretion). The Court therefore dismisses Chatwani's F-1 status claim with prejudice.

          ii. Unlawful Detention

The government urges the Court to dismiss Chatwani's due process claims challenging unlawful detention because they are speculative and thus unripe. (Dkt. 41) at *10. According to the government, there was never any detention in this case and Chatwani's claim is based on the assertion that he "*may*, at some uncertain point in the future, be placed into removal proceedings and then detained by ICE." (Dkt. 41 at *10). Chatwani does not assert that he is or ever was detained, but that he is "part of a targeted group of foreign nationals at heightened risk of detention should Defendants resume their policy of terminating F-1 students' SEVIS records." (Dkt. 48 at *13).

A claim is not ripe for adjudication "if it rests upon contingent future events that may not occur as anticipated, or that may not occur at all." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016). An injury in fact must be "actual or imminent, not conjectural or hypothetical." *Friends of the Earth*, 528 U.S. at 180. As stated by the Seventh Circuit, "to establish injury in fact … a plaintiff must allege a 'real and immediate' threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013).

Chatwani underscores the government's "current emphasis on enforcement and on detaining and processing for removal as many undocumented foreign nationals as possible." Specifically, he asserts that the government plans "to specifically target universities and university students for harmful actions, including unlawful abductions, detentions, and removals from the country." *Id.* at *12, 13.

The Court acknowledges that the current administration's immigration policies and ruthless "enforcement" renders Chatwani and those in his situation more vulnerable to the loss of their liberty. If his status is not confirmed or further stripped, Chatwani's liberty interests could certainly be affected. However, because Chatwani has not been detained, his unlawful detention claim is not ripe

8

for adjudication. Accordingly, the Court dismisses Count III without prejudice to Chatwani's refiling his claim should he be detained in the future.

    c. *Count II: APA Violation*

        i. Applicability of the APA

The government asserts that the Privacy Act, not the APA, "controls agencies' procedures vis-à-vis amendment of governmental records over individuals." (Dkt. 41) at *12. Accordingly, it argues that Chatwani's case must be dismissed because the U.S. has not waived its sovereign immunity under the Privacy Act in cases concerning a foreign national's SEVIS record. *Id.* at *13.

This argument runs contrary to precedent. The Supreme Court found that Congress did not intend the Privacy Act to limit plaintiffs from pursuing relief under other statutes for the mishandling of government records. *See Dept. of Agriculture Rural Dev. Rural Housing Serv. v. Kirtz,* 601 U.S. 42 (2024). Federal district courts have accordingly followed suit. *See e.g., Yunwei Chen v. Noem, et al.,* No. 1:25-cv-00733-TWP-MG, 2025 WL 1163653, at *4-5 (S.D. Ind. Apr. 21, 2025); *Madan B K et al.,* 2025 WL 1171572, at *5. Chatwani may therefore pursue relief under the APA, which waives sovereign immunity for federal district court actions brought by "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702. The waiver applies as long as a plaintiff "seek[s] relief other than monetary damages," has "no other adequate remedy," and whose action is not "expressly or impliedly forbid[den] by 'any other statute.'" *Madan B K et al., v. Noem et al.,* No. 1:25-cv-419, 2025 WL 1171572, at *5 (W.D. Mich. Apr. 23, 2025) (quoting 5 U.S.C. §§ 702, 704). Chatwani satisfies each of these requirements.

The Court therefore finds that the Privacy Act does not bar review of Chatwani's APA claims.[3]

---

[3] To the extent the government contends that Chatwani's APA claim is subject to the second limitation—that he have no other adequate remedy of law—and that Chatwani can seek relief under the Privacy Act, this argument likewise fails. Chatwani is not requesting or seeking to correct information contained in government records or challenging an unauthorized disclosure of

      ii. "Final Agency Action"

Even if Chatwani's APA claims are not prohibited from review, the government claims there is no requisite "final agency action" here. (Dkt. 18) at *13. It argues that Chatwani has ignored other steps in the administrative process to challenge the revocation of his F-1 status that he could utilize prior to bringing suit. *See* (Dkt. 41) at *14. Thus, "even if [Chatwani's] nonimmigrant status (rather than only his SEVIS record) were at issue … he could administratively challenge the relevant agency decisions," meaning there was "no 'consummation' of anything." *Id.* The APA "allow[s] any person 'adversely affected or aggrieved' by agency action to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action' for which there is no other adequate remedy in a court." *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting 5 U.S.C. §§ 701–06). An action is final under the APA only if (1) it marks "the consummation of the agency's decision-making process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

Chatwani argues that the initial termination of his SEVIS status was a "final agency action" because "reinstatement is not a mandatory review process and thus the failure to pursue it does not defeat finality." (Dkt. 48) at *11 (citing *Jie Fang*, 935 F.3d at 182–83). Regarding the government's assertion that Chatwani could have used administrative procedures to address a revocation, Chatwani claims that because immigration judges "ha[ve] no authority to grant F-1 student status or reinstatement" and can "only terminate proceedings if F-1 status is restored by the agency while proceedings are in progress," there is no mechanism to review the termination in a removal proceeding. *Id.*

---

confidential information, all of which could be appropriately sought under the Privacy Act. Chatwani is challenging the complete termination of his SEVIS records. *See Madan B K et al.,* 2025 WL 1171572, at *5; *Doe v. Noem,* No. 2:25-cv-01103, 2025 WL 1134977, at *4 (E.D. Cal. Apr. 17, 2025).

10

At this stage, Chatwani has sufficiently alleged that his F-1 status was terminated along with his SEVIS records, and that such termination was a final agency action. First, the government's assertion that terminating Chatwani's SEVIS record does not affect his F-1 status has been rejected by numerous courts, including in this district. *See, e.g. Student Doe #1 v. Trump*, No. 25-cv-4188, 2025 WL 1341711, at *12 (N.D. Ill. May 8, 2025) (Ellis, J.) (holding that "[t]he State Department, DHS, and sponsoring schools all follow the agencies' guiding sources and consider the termination of a student's SEVIS record equivalent to the termination of that student's F-1 status."). This is because when a school or ICE terminates a student's SEVIS record, "the student becomes unauthorized to work, unauthorized to stay in the United States, and loses F-2 status for any dependent." *Id.* Thus, the termination of students' F-1 status "mark[s] the consummation of the agency's decision-making process" and determines a right or obligation because it "end[s] the student's legal status in the United States," providing grounds for students to be subject to arrest, deportation, and accrual of unlawful presence. *See Chen*, 2025 WL 1163653 at *7*; *see Jie Fang*, 935 F.3d at 180; *See Doe v. Noem*, No. 2:25-cv-633-DGE, 2025 WL 1141279, at *3 (W.D. Wash. Apr. 17, 2025).

Regarding Chatwani's ability to address the termination of his SEVIS records through administrative procedures, courts note that there is "no statute or regulation that *requires* Plaintiffs to appeal ICE's SEVIS record termination decision." *Doe #1 v. Trump*, 2025 WL 1341711, at *9. Further, even if a student were to pursue SEVIS reinstatement, no "mechanism to review the propriety" of the original termination exists. *See Jie Fang*, 935 F.3d at 182; *see also Doe,* 2025 WL 1141279, at *3 (noting that "[i]f USCIS does not reinstate the student, the student may not appeal the decision."). Considering the facts in the light most favorable to Chatwani, the Court agrees with the overwhelming majority of case law that the decision to terminate Chatwani's F-1 status is a reviewable, final agency action.

### iii. Merits of APA Claim

Chatwani claims that the government's "termination of Mr. Chatwani's F-1 student status under the SEVIS system" violated the APA as "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law." (Dkt. 29) ¶ 51, 52. Further, the government "did not consider any facts relevant to his individual circumstances nor did they provide any explanation, let alone reasoned explanation, justifying their determination." *Id.* ¶ 55.

An F-1 visa holder's status may be subject to termination for three separate reasons: (1) revocation of a waiver; (2) introduction of a private bill to confer permanent residence on the nonimmigrant; or (3) pursuant to notification in the Federal Register, due to national security, diplomatic, or public safety. *See* 8 C.F.R. § 214.1(d). The record before the Court contains no facts supporting the termination of Chatwani's SEVIS record for any of these reasons. The government has only offered the declaration of Andre Watson claiming that "[b]eginning in March of 2025, ICE reviewed and terminated numerous SEVIS records due to information provided by U.S. Department of State and criminal databases." (Dkt. 30-3) ¶ 4. Such an assertion is not specific to Chatwani and contradicts Chatwani's specific allegations that he was not subject to termination under the statute for criminal reasons. (Dkt. 29) ¶¶ 3, 29. At this stage, Chatwani has sufficiently alleged that the government did not have a legitimate basis to terminate his F-1 status under 8 C.F.R. § 214.1(d). Accordingly, the Court denies the government's motion to dismiss Chatwani's APA claim.

### d. Count IV: Habeas Corpus

Lastly, the government argues that the Court must dismiss Chatwani's petition for a writ of habeas corpus for the same reason that Chatwani's unlawful detention claims are unripe: Chatwani is not currently in detention or otherwise "in custody."

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws … of the United States." 28 U.S.C. § 2241.

Custody is not limited to physical confinement but requires that an individual's liberty is substantially restrained. *See Justs. of Bos. Mun. Ct. v. Lydon*, 466 U.S. 294, 300 (1984) ("[T]he use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody." (citation omitted)); *see also Maleng v. Cook*, 490 U.S. 488, 492 (1989) (noting that the custody requirement has been "very liberally construed"). While Chatwani alleges that his SEVIS record was reactivated and that he has resumed work at Northwestern, he maintains that the "threat to liberty and physical safety" resulting from his SEVIS record and F-1 status being potentially terminated "is not speculative." (Dkt. 48) at *14 (citing *Parra Rodriguez v. Noem*, No. 3:25-cv-616, 2025 WL 1284722 at *8 (D. Conn. May 1, 2025) (referring to "the myriad of cases around the United States involving international students being detained and facing removal proceedings….")).

The Court agrees that international students whose SEVIS records are terminated face an "ongoing threat of arrest, detention, and removal from the U.S.," imposing restraints on their liberty that are not shared by the general public. *Id.* Where ICE lacks proper justification for terminating SEVIS records, such restraints are unlawful and fall within the core of habeas corpus. However, those restraints do not apply to Chatwani while his SEVIS record is active and he maintains his F-1 status. While he may be at risk of having his SEVIS record terminated again, it is not a foregone certainty such that he has standing to challenge future confinement. Habeas corpus relief is not available for Chatwani while he is not "in custody." Therefore, the Court dismisses Chatwani's petition for habeas corpus at this stage, without prejudice to his refiling a petition as necessary.

## II.     Preliminary Injunction

In addition to the relief he requests in his complaint, Chatwani seeks a preliminary injunction on the basis that the government is "preparing a new unlawful policy under which they can terminate his SEVIS record based on his visa being revoked or other unspecified reasons, whether or not he has actually done anything to violate or fail to maintain his F-1 status." (Dkt. 27) at *1.

13

The Court initially stayed Chatwani's motion to determine how his case may be impacted by the nationwide injunction issued by the United States District Court for the Northern District of California in *Doe v. Trump*, Case No. 25-cv-03140-JSW. *See* (Dkt. 37). The Court found that Chatwani was a "similarly situated individual[] subject to the nationwide injunction, reserving ruling on his motion for preliminary injunction while the nationwide injunction is in effect. *Id.*

As of the time of this Opinion, the *Doe* injunction has not been vacated or modified. However, courts in this district have found that "the pendency of … other cases and the preliminary injunction orders entered therein do not moot the present motion or otherwise counsel against its consideration." *Cook Cnty., Illinois v. McAleenan*, 417 F. Supp. 3d 1008, 1030 (N.D. Ill. 2019) (Feinerman, J.), *aff'd on other grounds sub nom. Cook Cnty., Illinois v. Wolf*, 962 F.3d 208 (7th Cir. 2020). This is because "[n]either the parties nor this court have any power over or knowledge of whether and, if so, when those … preliminary injunctions will be lifted or modified. Even a temporary lag between the lifting of both injunctions and the entry of a preliminary injunction by this court would entail some irreparable harm …." *Id.* Courts have accordingly issued preliminary injunctions in SEVIS records termination cases even as the nationwide injunction remains in effect. *See Doe #1 v. Trump*, 2025 WL 1341711. Considering these stakes, the Court will now rule on Chatwani's motion for a preliminary injunction.

The government argues that Chatwani does not meet the requirements for injunctive relief. Similar to its argument described above, it claims that Chatwani's case is moot and that therefore he has no likelihood of success on the merits. The government further argues that Chatwani has not met his burden of showing irreparable harm because "[he] is in the United States, with F-1 status, with a reactivated SEVIS entry, and with work authorization," and because his record is "is being made retroactive to the date of its initial termination such that there is no gap." (Dkt. 30) at *10–11. Finally, the government claims that the balance of equities and public interest are in its favor because

14

"serious separation-of-powers problems" arise in this case. Specifically, the government asserts that because immigration is a prerogative "reserved for the political branches—not the courts," granting injunctive relief will "undermine DHS's authority to enforce" its program. *Id.* at *11.

A party seeking a preliminary injunction must show that "(1) he has some likelihood of success on the merits of his claim; (2) traditional legal remedies are inadequate; and (3) he would suffer irreparable harm without preliminary injunctive relief." *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023) (citation omitted). If the moving party satisfies these factors, the Court then conducts a balancing test, "weigh[ing] the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021) (citation omitted). The Court also considers the "public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021) (citation omitted). The Court will address each factor in turn.

### A. Likelihood of Success

The government incorporates its previous arguments from its opposition to Chatwani's motion for a temporary restraining order. *See* (Dkt. 30) at *8. It claims that injunctive relief is inappropriate for the same reasons it moved to dismiss Chatwani's case: that Chatwani's case is moot, that the Privacy Act displaces the APA here, and that there was no "final agency action." (Dkt. 13) at *9–11. For the reasons discussed above, the Court rejects each of these arguments. Although the government offers no other arguments as to why Chatwani has no likelihood of success on the merits, the Court will briefly address this requirement.

Chatwani claims that DHS's decision to terminate his SEVIS records and F-1 status was arbitrary and capricious under the APA. Where an agency's decision is arbitrary and capricious, a court "shall … hold unlawful and set aside agency action." 5 U.S.C. § 706(a)(2)(A). An agency's decision is arbitrary and capricious when it:

15

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Awad v. Kerry*, 257 F. Supp. 3d 1016, 1020 (N.D. Ill. 2016) (Feinerman, J.) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007)). To survive arbitrary and capricious review, an agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation and internal quotation marks omitted).

As explained, there are three enumerated reasons listed in § 214.1(d) which allow DHS to terminate a student's F-1 visa status. The government does not claim that Chatwani's case falls into any one of these categories, nor describe any circumstances under which a student may fail to maintain their F-1 status under § 214.1(f). Nowhere in the record does the government offer any lawful reason for authorizing termination of Chatwani's SEVIS records. For that reason, the Court finds that Chatwani demonstrated a likelihood of success on his allegation that the government's action was arbitrary and capricious.

### B. Inadequacy of Traditional Legal Remedies and Irreparable Harm

Part of the balancing test for a preliminary injunction is determining the adequacy of traditional legal remedies, and whether the movant would suffer irreparable harm without an injunction. *Finch v. Treto,* 82 F.4th 572, 578 (7th Cir. 2023). The Seventh Circuit held that these elements go hand-in-hand: "[h]arm is irreparable if legal remedies are inadequate to cure it." *Life Spine, Inc. v. Aegis Spine, Inc.,* 8 F.4th 531, 545 (7th Cir. 2021). The essential question is whether monetary compensation is an adequate legal remedy. *See Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (defining "irreparable harm" as "harm that cannot be repaired and for which money compensation is inadequate." (citation omitted) (internal quotation marks omitted)).

Monetary damages are plainly inadequate to redress the harm Chatwani faces in the absence of a preliminary injunction. Chatwani claims that "at any time Defendants will resume their unlawful conduct and terminate his SEVIS record for arbitrary and capricious reasons and with no notice, causing him to once again lose his OPT and be at risk of detention." (Dkt. 27-1) at *9. As discussed, there are substantial legal consequences for students whose SEVIS records are terminated. Without legal status in the U.S., students are subject to loss of employment authorization and the risk of arrest or deportation. Therefore, the Court finds that Chatwani has satisfied this requirement.

### C. Balance of Equities and Public Interest

Because Chatwani has demonstrated a likelihood of success and irreparable harm, the Court must now weigh "the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the [C]ourt were to grant it." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). As in this case, "when the government is a party, the balance of equities and the public interest factors merge." *Nken v. Holder,* 556 U.S. 418, 434 (2009). There is a strong public interest "in having a [government] that conducts itself fairly and according to its stated regulations and policies." *Doe #1 v. Trump*, 2025 WL 1341711 at *14 (citing *Eight N. Indian Pueblos Council, Inc. v. Kempthorne*, No. CV 06-745, 2006 WL 8443876 at *5 (D.N.M. Sept. 15, 2006) ("It is in the public interest that federal agencies comply with their own policies and with federal statutes.")).

The government has not demonstrated how a preliminary injunction would interfere with its ability to enforce U.S. immigration laws and "administer its own program to collect information relating to nonimmigrant foreign students." (Dkt. 30) at *11 (citing 8 U.S.C. § 1372). Ironically, DHS itself failed to comply with immigration laws through impermissibly terminating Chatwani's SEVIS records. The balance of equities therefore favors Chatwani's interest in DHS's compliance with its own regulations and policies.

### D. Bond

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, "the case law has somewhat weakened the force of the 'no order shall issue' language" in Rule 65(c). *Reinders Bros., Inc. v. Rain Bird E. Sales Corp.*, 627 F.2d 44, 54 (7th Cir. 1980). The government offers no reason to require Chatwani post a bond other than that Rule 65(c) makes such security "mandatory." (Dkt. 30) at *12. Nor does the government suggest a bond amount that would be appropriate. Where "the record does not indicate that [the government] will suffer any monetary damages due to the preliminary injunction," courts in this district have declined to require plaintiffs to post a bond. *Doe #1 v. Trump*, 2025 WL 1341711 at *14. Such is the case here. Therefore, the Court exercises its discretion in declining to require Chatwani to post a bond for the preliminary injunction.

**CONCLUSION**

For these reasons, the government's motion to dismiss is denied as to Count II and granted as to Counts I and III; Chatwani's petition for a writ of habeas corpus is dismissed without prejudice; and his motion for a preliminary injunction is granted. The government is enjoined from terminating Chatwani's SEVIS record without lawful justification, and from detaining Chatwani and removing him from the jurisdiction of this Court.

**IT IS SO ORDERED.**

Date: 2/18/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge